# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE CO. | : : : | |
| v. | : : | CIVIL NO. CCB-09-1698 |
| WENDY PERLBERG, *et al.* | : : : | |
| NEW HAMPSHIRE INSURANCE CO., Movant-Intervenor. | : : ...o0o... | |

## MEMORANDUM

Pennsylvania National Mutual Casualty Insurance Company ("Penn National") has filed a declaratory judgment action in diversity against Wendy Perlberg and Ryan Leigh Realty (collectively the "Perlberg defendants") with regard to its obligations under an insurance policy it issued to them.[1] Now pending before the court is New Hampshire Insurance Company's ("New Hampshire's") motion to intervene as a co-defendant as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2) or, in the alternative, by the permission of the court pursuant to Rule 24(b). Penn National opposes New Hampshire's intervention, arguing in part that New Hampshire's presence in the case will defeat diversity and destroy the court's subject matter jurisdiction. The parties' submissions have been reviewed and no hearing is necessary. For the following reasons, New Hampshire's motion to intervene under Rule 24(b) will be granted.

## BACKGROUND

Penn National, a Pennsylvania corporation, filed the present action against the Perlberg defendants, citizens of Maryland, on June 29, 2009 seeking a declaration of rights and

---

[1] The plaintiffs in the underlying lawsuit, Shayna Estrella, Rayna Hartley, Jose Estrella, and J.E., a minor, are also named as defendants.

obligations under a Commercial General Liability insurance policy ("the insurance contract") it issued to them with respect to an underlying personal injury lawsuit. The plaintiffs in the underlying lawsuit, *Shayna Estrella, et al. v. Ryan-Leigh Realty, Inc., et. al.* ("the Estrella matter")[2], allege that the Perlberg defendants, among others, owned, controlled and/or managed a residential rental property at which one or more of the plaintiffs were exposed to paint chips and paint dust containing lead from 1990 to 1995, and that the Perlberg defendants were negligent in not preventing the exposure to lead. The insurance contract issued by Penn National to the Perlberg defendants was effective from July 1, 1993 to August 1, 1997,[3] but Penn National seeks a declaratory judgment that it owes no duty or obligation to defend or indemnify either of the Perlberg defendants with respect to the claims raised in the Estrella matter or, in the alternative, that its duty is limited.

New Hampshire, a Pennsylvania corporation, also issued a Commercial General Liability insurance policy to the Perlberg defendants, effective from July 1, 1989 to July 1, 1993. Under a reservation of rights, New Hampshire has defended the Perlberg defendants in the Estrella matter, and has paid one hundred percent of their defense. If this court finds that Penn National owes the Perlberg defendants a defense with respect to the Estrella matter, New Hampshire argues that it may have contribution rights against Penn National. Accordingly, New Hampshire seeks to intervene in the present declaratory judgment action to protect its potential contribution rights. Pursuant to Federal Rule of Civil Procedure 24(c), New Hampshire has filed, along with

---

[2] The Estrella matter, case number 24-C-08-000125, was filed in the Circuit Court for Baltimore City on or about January 8, 2008.

[3] Penn National issued the insurance contract to "Wendy's Realty" for the contract period July 1, 1993 to July 1, 1994, renewed annually until July 1, 1996, and extended by separate agreement until August 1, 1997. By endorsement dated March 25, 1994, the insurance contract was amended to include Ms. Perlberg and Ryan-Leigh Realty, Inc., as additional insureds, and the amendment was effective retroactively as of July 1, 1993.

its motion, a proposed answer to the complaint and a counterclaim for contribution from Penn National for its *pro rata* share of the Perlberg defendants' defense to date. (*See* New Hampshire Mot. Ex. 2.) The Perlberg defendants have consented to New Hampshire's intervention. (*See* Docket Entry No. 25.)

## **ANALYSIS**

Penn National argues that the intervention of New Hampshire, also a citizen of Pennsylvania, as a co-defendant would destroy diversity jurisdiction and deprive the court of its subject matter jurisdiction. The court disagrees. Accordingly, because the court finds that permissive intervention is appropriate, New Hampshire's motion to intervene will be granted.

### I. *Subject Matter Jurisdiction*

The court's sole basis for jurisdiction in this case is diversity. It is well-settled that where a court's subject matter jurisdiction rests on diversity, the parties to the lawsuit must be completely diverse. *See* 28 U.S.C. § 1332; *Strawbridge v. Curtiss*, 7 U.S. 267, 267-68 (1806) (establishing the complete diversity rule). In any civil action where the district court has original jurisdiction, 28 U.S.C. § 1367(a) confers "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . ." In particular, "such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." *Id.* But in diversity cases, supplemental jurisdiction is limited by 28 U.S.C. § 1367(b), which states in full:

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

3

In a case involving joinder by the defendant of nondiverse parties as counterclaim defendants under Rule 13(h), the Fourth Circuit explained that the purpose of § 1367(b) is to "prevent plaintiffs from circumventing the requirements of diversity." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998). Accordingly, "the limitation of § 1367(b) applies only to *plaintiffs'* efforts to join nondiverse parties." *Id*. at 492 (emphasis in original).

By contrast, the plain language of § 1367(b) does not prohibit the exercise of supplemental jurisdiction over a nondiverse defendant-intervenor under Rule 24. *See* Denis F. McLaughlin, *The Federal Supplemental Jurisdiction Statute – A Constitutional and Statutory Analysis*, 24 ARIZ. ST. L.J. 849, 958 (1992) (stating that "the precise wording of § 1367(b) does not prohibit supplemental claims by a defendant-intervenor") (article cited approvingly in *United Capitol*, 155 F.3d at 492-93 & *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 727 (2d Cir. 2000)); *see also Dev. Fin. Corp. v. Alpha Housing & Health Care, Inc.*, 54 F.3d 156, 160 (3d Cir. 1995) (observing that § 1367(b) "has little to say about defendants"). Furthermore, although the Fourth Circuit has not addressed the issue of whether supplemental jurisdiction is appropriate over the claims of a nondiverse party seeking to intervene as a defendant, other circuit courts have suggested that supplemental jurisdiction in such circumstances is proper, so long as the intervening defendant is not indispensable. *See, e.g., In re Olympic Mills Corp.*, 477 F.3d 1, 12 (1st Cir. 2007) (citing cases for the proposition that the "weight of authority holds that claims launched by necessary but dispensable, nondiverse defendant-intervenors do not defeat the original jurisdiction (diversity) that obtained at the commencement of the action", and holding that it had jurisdiction over two nondiverse, but dispensable defendant-intervenors); *Mattel v. Bryant*, 446 F.3d 1011, 1014 (9th Cir. 2006) (explaining that "[n]either § 1332 nor § 1367 upset the long-established judge-made rule that the presence of a nondiverse and not indispensable

defendant intervenor does not destroy complete diversity", and affirming the intervention of a nondiverse, not indispensable defendant under Rule 24(a)(2)); *Dev. Fin. Corp.*, 54 F.3d at 161 (determining that "§ 1367(b) does not deprive the district court of supplemental jurisdiction over a counterclaim or cross-claim raised by an intervening defendant, even where the intervenor shares citizenship with an original party", and holding that it was error for the district court to deny a nondiverse defendant's motion to intervene pursuant to Rule 24(a)(2)).[4] The intervention of an *indispensable* nondiverse defendant does destroy diversity, however, because, as the First Circuit explained in *Olympic Mills*, "otherwise, a plaintiff could leave non-diverse defendants out of the original lawsuit and then wait for them to be impleaded or otherwise joined." 477 F.3d at 11 (internal quotation marks and citation omitted).

---

[4] Furthermore, in *Viacom*, the Second Circuit ruled that supplemental jurisdiction over the claims of a nondiverse fourth-party defendant joined under Rule 19 was appropriate, but determined that no jurisdiction existed over claims by the plaintiff against the nondiverse defendant. 212 F.3d at 726-27. In *Merrill Lynch & Co., Inc. v. Allegheny Energy*, 500 F.3d 171, 179 (2d Cir. 2007), however, the Second Circuit held that the district court's reliance on the "assumption in *Viacom* that original jurisdiction is anchored in the diversity between the original parties and so any subsequent joinder that is not prohibited by § 1367(b) comes within the court's supplemental jurisdiction . . . was misplaced". The court explained that after the Supreme Court's holding in *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005), which specifically addressed the amount in controversy requirement in § 1332, it became clear that the contamination theory "furnishes limitations on joinder in certain circumstances that may well extend beyond the restrictions listed in § 1367(b)." *Merrill Lynch*, 500 F.3d at 179. Because a "failure of diversity . . . contaminates the action, so to speak, and takes away any justification for providing a federal forum", the Second Circuit found that the district court erred by exercising jurisdiction over the claims of a nondiverse party joined as a defendant under Rule 19(a). *Id*.
Nevertheless, the Second Circuit noted in *Merrill Lynch* that *Exxon* could still be read to "preserv[e] certain well-established exceptions to the complete diversity rule", and cited *Olympic Mills*, 477 F.3d at 11-12, as one such exception. *Merrill Lynch*, 500 F.3d at 179. Accordingly, although *Merrill Lynch* stands for the proposition that there may be limitations on the exercise of supplemental jurisdiction over nondiverse parties that extend beyond the restrictions enumerated in § 1367(b), the rule described in *Olympic Mills* allowing the presence of a nondiverse, dispensable defendant-intervenor, appears to have been preserved.

5

Penn National relies primarily on *Barrett v. Prison Health Services, Inc.*, 647 F. Supp. 2d 314 (D. Vt. 2009), *Central Synagogue v. Turner Construction Co.*, 64 F. Supp. 2d 347 (S.D.N.Y. 1999), and *Betancourt-Torres v. P.R. Electric Power Authority*, 164 F.R.D. 307 (D.P.R. 1996) for its argument that supplemental jurisdiction over the claims of a nondiverse defendant-intervenor is prohibited by § 1367(b). But these cases are inapposite. *Barrett* involved an attempt by the original plaintiff to join a nondiverse defendant under Rule 20, and the court determined that this was prohibited by the plain language of § 1367(b). 647 F. Supp. 2d at 318-19. Similarly, *Central Synagogue* involved what the court described as joinder of a nondiverse plaintiff by the original defendant pursuant to Rule 19. *See* 64 F. Supp. 2d at 350. There, the court determined that § 1367(b) "precludes claims 'by persons proposed to be joined as plaintiffs' under Rules 19 or 24", and that the "passive voice of 'proposed to be joined' clearly contemplates a situation where a party *other than* the potential plaintiff is *proposing to join* that potential plaintiff to the action – the exact situation in the instant case." *Id*. (alterations in original) (quoting § 1367(b)). Finally, in *Betancourt-Torres*, where a nondiverse party sought to intervene as a plaintiff pursuant to Rule 24(b)(2), the court held that the prohibitions of § 1367(b) were "entirely applicable" because the "petitioners [we]re seeking permissive intervention as plaintiffs". 164 F.R.D. at 309. None of these cases dealt directly with the situation here – a nondiverse party seeking to intervene as a defendant – and are, therefore, unpersuasive.[5]

---

[5] Penn National also relies on *Lumber Insurance Cos. v. Allen*, 892 F. Supp. 31 (D.N.H. 1993), a case prohibiting intervention under Rule 24(a)(2) by a nondiverse defendant. As Penn National acknowledges, however, this case arguably was superseded by *Olympic Mills*, 477 F.3d at 12, which affirmed the intervention of two nondiverse, but dispensable, defendants under Rule 24(a)(2). (*See* Penn Opp'n Mem. at 4 n.2.) There is no binding Fourth Circuit precedent on the issue, and this court is inclined to follow the ruling in *Olympic Mills*, a recent First Circuit case, rather than that of the earlier district court case from that circuit.

Moreover, from a policy perspective, limiting § 1367(b) to its plain language and allowing supplemental jurisdiction over the claims of nondiverse, but not indispensable, defendant-intervenors makes good sense. As the Third Circuit has explained, "[c]onsiderations of judicial economy [ ] counsel in favor of limiting § 1367(b) to its plain language, rather than extending its jurisdictional bar to claims raised by intervening defendants," because "[w]here an intervenor's claims are so entangled with the original claims and parties, banishing the non-diverse claim to state court would not serve the goal of judicial efficiency." *Dev. Fin. Corp.*, 54 F.3d at 161. The Fourth Circuit has observed that Congress enacted § 1367(b) to "enable parties to resolve in one action all of their disputes arising from the same core of facts and thereby conserve judicial resources," but "did not want plaintiffs to be able to plead a complaint craftily so as to force a nondiverse case into federal court." *United Capitol*, 155 F.3d at 493. Congress did not deem the "joinders and impleaders" of defendants, however, "as suspect as those of the plaintiff, who is master of his complaint." *Id*. Thus, the clear weight of authority suggests that so long as New Hampshire is not an indispensable party, the court may exercise supplemental jurisdiction over its claims as a defendant-intervenor if they form part of the same case or controversy.[6]

There is, however, some question as to what effect New Hampshire's permissive intervention, as opposed to intervention as of right, would have on this court's supplemental

---

[6] New Hampshire has moved to intervene as a co-defendant and Penn National has not argued that New Hampshire is more properly aligned as a plaintiff. Because the primary issue in this lawsuit is Penn National's obligation, or lack thereof, under the insurance policy it issued to the Perlberg defendants, and New Hampshire, as an additional insurer, has an interest in Penn National paying under the policy, the court finds that New Hampshire is properly aligned as a defendant. *See Palisades Collections LLC v. Shorts*, 552 F.3d 327, 337 (4th Cir. 2008) (explaining that to determine whether to realign parties, courts should apply the "principal purpose test: First, [they] determine the primary issue in controversy, and then [they] align the parties according to their positions with respect to the primary issue.") (internal quotation marks and citation omitted).

7

jurisdiction under § 1367(b). Prior to the enactment of § 1367 in 1990, permissive intervention required an independent jurisdictional basis, whereas intervention as of right fell plainly within a federal court's ancillary jurisdiction. *See Am. Nat'l Bank & Trust Co. of Chicago v. Bailey*, 750 F.2d 577, 583 (7th Cir. 1984) (citing 7A Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1917 (1972)). Under the plain language of § 1367(b), however, "it is no longer necessary to distinguish between intervention of right and permissive intervention for the purpose of establishing jurisdiction." *Conseco v. Wells Fargo Fin. Leasing, Inc.*, 204 F. Supp. 2d 1186, 1192 (S.D. Iowa 2002) (internal quotation marks omitted) (citing 6 Moore's Federal Practice 3d § 24.22[2]); *see also Langone v. Flint Ink N. Am. Corp.*, 231 F.R.D. 114, 117 n.3 (D. Mass. 2005) (explaining that § 1367(b) "makes no distinction between intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b)"); *Liberty Mut. Group v. Hillman's Sheet Metal & Certified Welding, Inc.*, 168 F.R.D. 90, 92 (D. Me. 1996) (observing that the "plain language of § 1367(b) makes no distinction between intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b)").

Nevertheless, there appears to be some disagreement among courts as to whether a distinction still exists, and whether an independent jurisdictional basis is therefore required for the claims of nondiverse defendant-intervenors. *See Langone*, 231 F.R.D. at 117 n.3 (explaining that § 1367 "arguably provides independent jurisdiction over a permissive defendant-intervenor's claims", but noting that "this question is hardly a settled one") (citing cases); *but see Conseco*, 204 F. Supp. 2d at 1192 (stating that "[i]n a case founded solely on the court's diversity jurisdiction, the claims of a party who intervenes as a defendant, of right or permissively, are within the court's supplemental jurisdiction if part of the same case or controversy as the claims in the original action").

Because the Fourth Circuit has not spoken on the issue, this court is inclined to abide by the plain language of § 1367(b), which does not distinguish between permissive intervention and intervention as of right.[7] In *Conseco* the court explained that although the requirement for independent jurisdiction remains true for permissive counterclaims not arising "out of the same transaction or occurrence" and therefore not usually part of the same case or controversy as required by § 1367(a), "independent jurisdiction should no longer be required with respect to those whose intervention as a defendant is permissive only because an existing party would have adequately represented the intervenor's interests, but whose claims are so closely connected with the original action that they satisfy the case or controversy requirement".[8] 204 F. Supp. 2d at 1192. This approach comports with the language of § 1367 and, at the same time, promotes judicial efficiency. Accordingly, the court finds that supplemental jurisdiction is not precluded by § 1367(b) where the claims of a nondiverse, but not indispensable, defendant-intervenor are part of the same case or controversy, regardless of whether intervention is as of right pursuant to Rule 24(a)(2), or permissive pursuant to Rule 24(b).

II.     *Indispensability under Rule 19(b)*

Next, it must be determined whether New Hampshire is an indispensable party that would destroy diversity if allowed to intervene under Rule 24. To determine whether a party is "indispensable" under Federal Rule of Civil Procedure 19(b),

---

[7]     The aforementioned circuit court cases determining that § 1367(b) did not prohibit the intervention of a nondiverse dispensable defendant-intervenor specifically involved intervention under Rule 24(a)(2). None of them, however, discussed any distinction between permissive intervention and intervention as of right. *See Olympic Mills*, 477 F.3d 1; *Mattel*, 446 F.3d 1011; *Dev. Fin. Corp.,* 54 F.3d 156.

[8]     Because the movant in *Conseco* had filed a third party complaint, rather than answering the complaint and filing a counterclaim as a defendant, the court ultimately denied the motion to intervene without prejudice so that the movant could re-file a motion to intervene as a defendant. *See* 204 F. Supp. 2d at 1194.

> a court must decide: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 552 (4th Cir. 2006) (quoting Rule 19(b)). It should be noted that "[a] Rule 19(b) analysis is not mechanical; rather it is conducted in light of the equities of the case at bar." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Rite Aid of South Carolina, Inc.*, 210 F.3d 246, 252 (4th Cir. 2000) (internal quotation marks and citation omitted).

Applying those factors here, it is clear that New Hampshire is not an indispensable party because Penn National's obligation to defend and/or indemnify the Perlberg defendants in the underlying Estrella matter can be adequately determined without the presence of New Hampshire. There will be no real prejudice to the original parties if New Hampshire does not become a party to this lawsuit, and although New Hampshire will be negatively affected by having to file a separate lawsuit for contribution if not allowed to intervene, this inconvenience alone does not make New Hampshire indispensable. Accordingly, New Hampshire is not an indispensable party such that its intervention under Rule 24 would destroy this court's diversity jurisdiction.

III.     *Intervention under Rule 24*

Rule 24 provides for two types of intervention. "Intervention of Right" requires the court to permit anyone to intervene upon timely motion who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Thus, to

10

intervene as of right, a movant must show: (1) timely application; (2) an interest in the subject matter of the underlying action; (3) that a denial of the motion to intervene would impair or impede the movant's ability to protect its interest; and (4) that the movant's interest is not adequately represented by the existing parties to the litigation. *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999). "A party moving for intervention under 24(a) bears the burden of establishing a right to intervene, and must do so by satisfying all four requirements." *U.S. ex rel. MPA Const., Inc. v. XL Specialty Ins. Co.*, 349 F. Supp. 2d 934, 937 (D. Md. 2004) (citing *In re Richman*, 104 F.3d 654, 658 (4th Cir. 1997)).

"Permissive Intervention", on the other hand, allows the court, in its discretion, to permit anyone to intervene upon timely motion who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Rule 24(b) notes that in "exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the application of the rights of the original parties." Rule 24(b)(3). But issues of delay or undue prejudice have no weight in consideration of a Rule 24(a) motion. *See In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991).

Although New Hampshire can show that it has an interest in the subject matter of this declaratory judgment action, New Hampshire has not shown that its interest is not adequately represented by the Perlberg defendants. New Hampshire argues that it has a stake in the question of whether Penn National owes the Perlberg defendants any duty to defend or indemnify them in the Estrella matter because if it is determined that no such duty exists, New Hampshire will bear one hundred percent of the burden of the Perlberg defendants' defense. By contrast, if it is determined that Penn National owes the Perlberg defendants a duty under the insurance contract, New Hampshire argues it will then have a right of contribution against Penn National, as it has

11

paid the entirety of their defense to date. But while it appears that the outcome of this action is indeed of interest to New Hampshire, New Hampshire's objective is ultimately the same as that of the Perlberg defendants: to defeat Penn National's defenses to insurance coverage under the insurance contract.

The movant's burden of showing an inadequacy of representation is minimal, but "[w]hen the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion, or nonfeasance." *Virginia v. Westinghouse Elec. Corp.*, 542 F.2d 214, 216 (4th Cir. 1976). New Hampshire acknowledges that it and the Perlberg defendants "take similar positions concerning Penn National duties and obligations with respect to the Estrella matter," but New Hampshire argues its interest cannot be adequately represented by the Perlberg defendants because they lack its "direct interest" in the "preservation and perfection of its contribution claims against Penn National". (New Hampshire Mem. at 9.) But while New Hampshire's interest in this lawsuit is not identical to the Perlberg defendants', the parties seeks the identical result: a finding that Penn National owes a duty to defend or indemnify the Perlberg defendants in the Estrella matter. Although that result may lead to different legal and economic circumstances for New Hampshire and the Perlberg defendants, their ultimate objective remains the same. *See, e.g., Diagnostic Devices, Inc. v. Taidoc Tech. Corp.*, 257 F.R.D. 96, 99-100 (W.D.N.C. 2009) (explaining that while "the degree of relative importance" of the pending TRO hearing to two intervenors "may be far greater than to [the existing defendant]", it was nevertheless unclear whether they met all the criteria for intervention under Rule 24(a) since they would address the same issue at the hearing as the defendant, namely the validity of a sales agreement).

Accordingly, only a showing of adversity of interest, collusion or nonfeasance will overcome the presumption of adequate representation. New Hampshire has neither argued, nor shown, that its interest is adverse to that of the Perlberg defendants, nor that there has been any collusion or nonfeasance. Thus, New Hampshire's interest in the present declaratory judgment action is adequately represented by the Perlberg defendants, and New Hampshire cannot intervene as of right under Rule 24(a)(2).

The court finds, however, that permissive intervention under Rule 24(b) is nevertheless appropriate in this case. This lawsuit can determine Penn National's declaratory judgment action and New Hampshire's contribution claim in one proceeding, while allowing all parties to be heard. Likewise, intervention will avoid a competing suit in state court. *See id*. at 100 (allowing permissive intervention and stating that "[i]nvervention here may help avoid inconsistent results and promote judicial economy"). Although New Hampshire and the Perlberg defendants seek the identical result in the declaratory judgment action, their interests are not identical, as contribution from Penn National is additional relief not sought by the Perlberg defendants. It would be desirable, therefore, to have all parties heard at this stage. *See First Penn-Pacific Life Ins. Co. v. William R. Evans, Chartered*, 200 F.R.D. 532, 538 (D. Md. 2001) (finding that intervention of right was not appropriate because the intervenor had not shown that its interests would not be adequately represented, but allowing permissive intervention because common questions of law and fact existed and there was no showing of undue delay or prejudice).

Moreover, the Perlberg defendants have consented to New Hampshire's intervention, and there is no prejudice to Penn National other than a possible lack of jurisdiction, which this court has already determined has not been shown. A denial of New Hampshire's motion to intervene, however, will have a negative practical impact on New Hampshire, even if New Hampshire will

13

not be collaterally estopped from bringing its contribution claim in state court. New Hampshire has moved to intervene early in the lawsuit, and there is no undue delay. Accordingly, this court will exercise its discretion under Rule 24(b)(2) and will grant the permissive intervention of New Hampshire. A separate Order follows.

| July 19, 2010 | /s/ |
|---|---|
| Date | Catherine C. Blake |
|  | United States District Judge |