IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PENNSYLVANIA NATIONAL MUTUAL  *
CASUALTY INSURANCE COMPANY    *
                              *
        v.                    *
                              *
WENDY G. PERLBERG, et al.     *
                              *
**************************** *    Civil No. CCB-09-1698
                              *
NEW HAMPSHIRE INSURANCE       *
COMPANY                       *
                              *
        v.                    *
                              *
PENNSYLVANIA NATIONAL MUTUAL  *
CASUALTY INSURANCE COMPANY    *
                              *
                         ******

MEMORANDUM

Pennsylvania National Mutual Casualty Insurance Company ("Penn National") initiated this suit, seeking a declaration that Penn National had no duty to defend or provide coverage in the underlying action brought by Shayna Estrella, Rayna Hartley, Jose Estrella, and J.E., a minor, (collectively, "the Estrella Parties") against Wendy G. Perlberg and Ryan-Leigh Realty, Inc. (collectively, "the Perlberg Parties"). Now pending before the court is Penn National's motion to disqualify attorneys Natalie C. Magdeburger ("Magdeburger") and Robin D. Korte ("Korte") and their law firm, Hodes, Pessin & Katz, P.A. ("HPK"), as counsel for the Perlberg Parties. The issues have been fully briefed and no oral argument is necessary. *See* Local Rule 105.6. For the reasons stated below, the motion will be denied.[1]

---

[1] In their opposition, the Perlberg Parties urge the court to impose sanctions against Penn National and award attorneys' fees under Federal Rule of Civil Procedure 11 because, they assert, the motion for disqualification lacks substantial justification and was brought for an improper purpose. This request for sanctions failed to comply with the procedure prescribed by Rule 11, which states, "A motion for sanctions must be made separately from any other

1

BACKGROUND

In 1993, Penn National issued an insurance contract providing benefits in connection with certain real estate, including a property located at 5102 Beaufort Avenue, Baltimore, Maryland ("the Property"). The Perlberg Parties were listed as named insureds under the contract. (Am. Compl. ¶¶ 11–18, 33.)

In January 2008, the Estrella Parties brought suit in the Circuit Court for the City of Baltimore ("the Underlying Action"), asserting that they suffered injury due to exposure to lead paint while residing in or visiting the Property. They claim the defendants in that action—including the Perlberg Parties—owned, controlled, or managed the Property, and they seek damages for common law negligence and under the Maryland Consumer Protection Act. After the Underlying Action was commenced, the Perlberg Parties requested defense and indemnity benefits from Penn National under the terms of the insurance contract. Penn National denied coverage, and, on June 29, 2009, it brought this action for a declaratory judgment regarding its obligation to provide coverage in the Underlying Action. (*Id.* ¶¶ 29–38.)

The present motion for disqualification of counsel arises out of the representation of the Perlberg Parties by HPK and Magdeburger. While reviewing documents for discovery in late 2010, Penn National discovered that, before joining HPK, Magdeburger worked for a firm,

---

motion." Fed. R. Civ. P. 11(c)(2). In addition, Penn National's conduct in filing the motion for disqualification was not sanctionable. Rule 11 permits a court to impose sanctions on an attorney or party that submits a motion "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," or without first engaging in an "inquiry reasonable under the circumstances" to determine that the "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law." Fed. R. Civ. P. 11(b)–(c). This rule, therefore, obligates an attorney to "conduct a reasonable investigation of the factual and legal basis" for his motion prior to filing. *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir. 1991). It "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories," however. *Id.* (internal quotation marks and citation omitted). This is not a case in which the law is so clearly contrary to the movant's position as to justify the imposition of sanctions. Although I find that disqualification is not appropriate in the present case, Penn National had reasonable grounds on which to argue that it was previously represented by Magdeburger in a substantially similar matter. There is no alternative basis on which to conclude Penn National acted with an improper purpose. Accordingly, the Perlberg Parties' request for sanctions will be denied.

Whiteford, Taylor & Preston, LLP ("WTP"), that Penn National frequently hired to defend its insureds against third-party lawsuits. Magdeburger represented Penn National's insureds in such cases, including actions involving lead-paint tort claims. (Pl. Penn National's Mot. Disqualify Attorneys ("Pl.'s Mot."), at 2–3.)

When alerted to this situation, Korte, an attorney with HPK, confirmed that Magdeburger, as well as another HPK attorney not directly involved in the present action, had represented Penn National's insureds in civil tort cases while employed by WTP. Neither attorney, however, had worked on issues relating to coverage under Penn National policies. (Pl.'s Mot., Ex. 1, Letter from Robin Korte to Kevin Streit (Jan. 19, 2011); Ex. 2, Letter from Robin Korte to Kevin Streit (Jan. 21, 2011).) In a sworn affidavit, Magdeburger acknowledges that she represented Penn National's insureds. She defended its insureds in automobile tort cases in the 1980s until the late 1980s or early 1990s, and, from 2000 to 2001, she represented them in matters involving lead-paint tort claims. (Defs.' Opp'n, Ex. A, Aff. of Natalie C. Magdeburger ¶¶ 4–6.) She reports, however, that she "was not involved in Penn National decisions concerning coverage issues," and she has "no knowledge of Penn National's practices concerning insurance coverage evaluation or decisions." (*Id.* ¶¶ 7–8.) She denies involvement in any insurance coverage cases involving Penn National or its insureds and asserts that she "did not obtain any information about Penn National when [she] worked as an assigned defense counsel at WTP that would relate in any manner to the issues before this Court" in this case. (*Id.* ¶¶ 8–9.)

Penn National now seeks disqualification of Magdeburger on the basis of her prior representation of its insureds. In addition, it argues this conflict must be imputed to all members of her firm, requiring the disqualification of all HPK attorneys.

STANDARD OF REVIEW

3

The disqualification of an attorney "is a drastic remedy since it deprives litigants of their right to freely choose their own counsel." *Gross v. SES Americom, Inc.*, 307 F. Supp. 2d 719, 722 (D. Md. 2004) (citing *Buckley v. Airshield Corp.,* 908 F. Supp. 299, 304 (D. Md. 1995)). The court, however, must also "be mindful of its obligation to the public and to upholding integrity in the judicial system." *Buckley*, 908 F. Supp at 304 (citing *Tessier v. Plastic Surgery Specialists, Inc.,* 731 F. Supp. 724, 724 (E.D. Va. 1990)). Accordingly, in deciding a disqualification motion, the court balances "two significant interests . . . : the client's free choice of counsel and the maintenance of the highest ethical and professional standards in the legal community." *Stratagene v. Invitrogen Corp.*, 225 F. Supp. 2d 608, 610 (D. Md. 2002) (internal quotation marks and citations omitted). In light of a party's right to select its own counsel and the drastic nature of disqualification, the movant "'bears a high standard of proof to show that disqualification is warranted.'" *Buckley*, 908 F. Supp. at 304 (quoting *Tessier*, 731 F. Supp. at 729). Although the court "must not weigh the competing issues with hairsplitting nicety" to avoid disqualification of conflicted counsel, *Stratagene*, 225 F. Supp. 2d at 610 (internal quotation marks and citations omitted), it should allow "[d]isqualification at the urging of opposing counsel . . . only where the conflict is such as clearly to call in question the fair and efficient administration of justice,'" *Gross*, 307 F. Supp. 2d at 723 (internal quotation marks and citation omitted).

## ANALYSIS

Pursuant to Local Rule 704, this court applies the Maryland Rules of Professional Conduct ("MRPC") as adopted by the Maryland Court of Appeals. MRPC 1.9 provides, in relevant part, "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's

4

interests are materially adverse to the interests of the former client." MRPC 1.9(a). The Rule further bars a lawyer whose former firm represented a client from knowingly representing another person with materially adverse interests in the same or a substantially related matter if the lawyer obtained confidential information regarding the former firm's client that is material to the matter. MRPC 1.9(b). No lawyer in a firm may knowingly undertake the representation of a person where another lawyer in the firm is prohibited from doing so under Rule 1.9 unless conditions not present here are met. MRPC 1.10(a). Therefore, if this court finds Magdeburger is barred from representing the Perlberg Parties as a result of her prior representation of Penn National's insureds, Korte and HPK must be disqualified as well.

In determining whether disqualification under MRPC 1.9 is proper, the court must undertake a two-part inquiry. It must find that the moving party established, first, "that an attorney-client relationship existed with the former client, and second, that the matter at issue in the former representation was the same or substantially related to that in the current action." *Stratagene*, 225 F. Supp. 2d at 610. Penn National has failed to satisfy either requirement.

   A. *Attorney-Client Relationship*

The Maryland Court of Appeals has "acknowledge[d] that determining 'what constitutes an attorney-client relationship is a rather elusive concept.'" *Attorney Grievance Comm'n v. Shoup*, 410 Md. 462, 979 A.2d 120, 135 (2009) (quoting *Attorney Grievance Comm'n v. Shaw*, 354 Md. 636, 732 A.2d 876, 883 (1999)). Such a relationship may arise through an explicit agreement or "by implication from a client's reasonable expectation of legal representation and the attorney's failure to dispel those expectations." *Attorney Grievance Comm'n v. Brooke*, 374 Md. 155, 821 A.2d 414, 425 (2003). Once an attorney-client relationship is found, "'an irrebuttable presumption arises that confidential information was conveyed to the attorney in the

5

prior matter,'" so disqualification will be required if the matters are substantially related. *Nichols Agency, Inc. v. Enchanted Child Care, Inc.*, 537 F. Supp. 2d 774, 779 (D. Md. 2008) (quoting *Attorney Grievance Comm'n v. Siskind,* 401 Md. 41, 930 A.2d 328, 337 (2007)).

Here, Magdeburger asserts that she previously represented only Penn National's insureds, not Penn National. Penn National counters that, under Maryland law, an attorney hired by an insurer to represent an insured in an action brought by a third party represents both the insurer and the insured. Jurisdictions are divided over whether, when an insurer hires an attorney to represent an insured, the attorney represents one party—the insured—or two—the insurer and the insured. *Compare Metro Life Ins. Co. v. Aetna Cas. & Sur. Co.*, 249 Conn. 36, 730 A.2d 51, 65 (1999) ("[W]e have long held that *even* when an insurer retains an attorney in order to defend a suit against an insured, the attorney's only allegiance is to the client, the insured." (emphasis in original)), *and Finley v. Home Ins. Co.*, 90 Hawai'i 25, 975 P.2d 1145, 1153 (1998) (holding "that the sole client of the attorney is the insured"), *with State Farm Mut. Auto. Ins. Co. v. Jones*, 37 So. 3d 87, 93–94 (Miss. Ct. App. 2009) ("It is well established that an attorney hired by an insurance provider to represent the insured represents two clients—the insured and the insurer."), *and Nandorf, Inc. v. CNA Ins. Cos.*, 134 Ill. App. 3d 134, 479 N.E.2d 988, 991 (App. Ct. 1985) ("The attorney hired by the insurance company to defend in an action against the insured owes fiduciary duties to two clients: the insurer and the insured.").

As the cases cited by Penn National establish, Maryland courts have concluded that dual representation of an insurer and its insured is ethically permissible and, indeed, is the typical consequence of common insurance contract language permitting the insurer to control the defense against third-party lawsuits. *See, e.g.*, *Driggs Corp. v. Pa. Mfrs.' Ass'n Ins. Co.*, 3 F. Supp. 2d 657, 659 (D. Md. 1998) ("[T]he law is clear in Maryland . . . that the mere fact of 'dual'

representation does not raise a conflict of interest, and, further, that dual representation is essentially waived by policy language giving the insurer the right to control the litigation by choosing counsel." (citation omitted)); *Brohawn v. Transam. Ins. Co.*, 276 Md. 396, 347 A.2d 842, 852 (1975) ("The customary clause in insurance policies requiring the insured to permit the insurer's lawyer to defend claims insured against is consent in advance by the insured to such dual representation and obviates an improper relationship." (internal quotation marks and citation omitted)); *Med. Mut. Liab. Ins. Soc'y of Md. v. Miller*, 52 Md. App. 602, 451 A.2d 930, 934 (Ct. Spec. App. 1982) ("Generally, where the interest of the insured and insurer run parallel, an attorney representing both may do so without offending ethical mandates."). That an attorney in Maryland *may*, in conformance with ethical rules, simultaneously represent an insurer and its insured does not establish, however, that in all cases in which an attorney is hired by an insurer to represent an insured, the attorney *does* engage in such dual representation. For example, in *Cardin v. Pacific Employers Insurance Co.*, 745 F. Supp. 330 (D. Md. 1990), Judge Garbis of this court noted that, even though the insurer hired an attorney to defend its insured, "[a]t no time . . . did [the attorney] undertake to represent *both*" because the attorney was instructed at the outset of the representation not to consider the insurer's interests in planning the insured's defense and the attorney had an ethical obligation to advance only the insured's interests. *Id.* at 337–38 & n.6 (emphasis in original).

Here, Penn National has established only that it hired Magdeburger to defend its insureds. It has not submitted the relevant insurance contracts to show that the insureds in those cases consented to dual representation, nor did it provide the retainer agreements defining the relationships between itself, its insureds, and the WTP attorneys. *Cf.* Charles Silver & Kent Syverud, *The Professional Responsibilities of Insurance Defense Lawyers*, 45 Duke L.J. 255,

270 (1995) ("[T]he retainer agreement directly regulates defense counsel's professional relationships with the [insurance] company and the insured. The retainer agreement determines the nature of those relationships, including whether they are attorney-client relationships or relationships of some other kind."). In addition, Penn National failed to present any evidence regarding the circumstances under which Magdeburger performed work for its insureds. This court concludes that, based on the evidence in the record, Penn National has not satisfied the high burden of proof necessary to sustain a disqualification motion in showing it stood in an attorney-client relationship with Magdeburger.

   *B. Substantial Relationship to the Present Action*

Even if an attorney-client relationship could be found, disqualification would not be appropriate because the present action lacks a substantial relationship with Magdeburger's alleged prior representation of Penn National. The focus of the substantial-relationship inquiry is "the factual nexus between the earlier representation and the present, adverse representation." *Blumenthal Power Co., Inc. v. Browning-Ferris, Inc.*, 903 F. Supp. 901, 902 (D. Md. 1995) (citation omitted). "'Substantially related' has been interpreted to mean 'identical' or 'essentially the same,' or 'factually related.'" *Nichols Agency*, 537 F. Supp. 2d at 779 (citations omitted). Though two matters need not "involve the same operative facts" to have a substantial relationship, there must be "a sufficient similarity of issue." *Buckley*, 908 F. Supp. at 304 (internal quotation marks and citation omitted). In undertaking this inquiry, "[t]he court's primary concern is whether there is a 'reasonable probability that confidences were disclosed in the prior representation which could be used against the former client in the current litigation.'" *Stratagene*, 225 F. Supp.2d at 611 (quoting *SuperGuide Corp. v. DirecTV Enters., Inc.,* 141 F. Supp. 2d 616, 622 (W.D.N.C. 2001)). Where the prior matter involved an organizational client,

however, "general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation." MRPC 1.9 cmt. 3; *see also Blumenthal Power*, 903 F. Supp. at 902 (refusing to disqualify an attorney because, in a prior representation, he learned only of "'overall corporate philosophy and strategy . . . in litigation matters,' settlement strategies, and the like").

Here, the uncontroverted evidence shows that, while Magdeburger represented Penn National's insureds in automobile and lead-paint tort cases, she was not involved in any matters related to coverage. Moreover, there is no evidence that the lead-paint lawsuits on which she worked were factually related to the Underlying Action. Her involvement in lead-paint cases while representing Penn National's insureds will not, by itself, bar her from participation in any lead-paint case in which her client takes a position adverse to Penn National. *See* MRPC 1.9 cmt. 2 ("[A] lawyer who recurrently handled a type of problem for a former client is not precluded for that reason alone from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client."). At most, Magdeburger may have gained knowledge of Penn National's general practices and policies, which is insufficient for disqualification. In light of these facts, it is not reasonably probable that confidences were disclosed to Magdeburger that could be used against Penn National in the present coverage dispute.

For the foregoing reasons, Penn National's motion will be denied.


May 20, 2011                                 /s/
Date                                                      Catherine C. Blake
                                                              United States District Judge